UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| BRENDA FERGUSON, | ) | |
| | ) | |
| Plaintiff | ) | No. 1:20-cv-00346-JRG-SKL |
| | ) | |
| v. | ) | |
| | ) | |
| MEMORIAL HEALTH CARE | ) | |
| SYSTEM, INC., d/b/a CHI Memorial | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Before the Court is Plaintiff Brenda Ferguson's motion to amend the complaint [Doc. 17]. Defendant Memorial Health Care System filed a response in opposition [Doc. 23]. Plaintiff did not file a reply, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. This matter is now ripe. For the reasons set forth below, I recommend the motion to amend be granted in part and denied in part.[1]

**I.  BACKGROUND**

Plaintiff worked for Defendant as a nurse from 2008-2019. She was terminated on April 22, 2019, after she tested positive for a certain medication during a drug test. Plaintiff produced a prescription for the medication, but Defendant claimed the prescription was invalid because it was over twelve months old. According to Plaintiff, Defendant had no policy against recognizing such prescriptions.

Defendant eventually reinstated Plaintiff, although not to a nursing position. Defendant told Plaintiff she could not return to a nursing position until her nursing license was reinstated;

---

[1] This Report and Recommendation does not address the merits of Defendant's pending motion to dismiss [Doc. 9], or Plaintiff's pending motion to strike [Doc. 19].

however, Plaintiff maintains that she was actually always in good standing with the Tennessee Board of Nursing. Regardless, Plaintiff alleges she was forced to work in the back of a chicken truck until she found a new nursing job with a different employer. As a result, she has suffered and continues to suffer significant loss of earnings and other damages.

Plaintiff contends Defendant discriminated against her on the basis of Defendant's erroneous perception of Plaintiff as a person with a disability, that is, a person with a "substance abuse problem," or an "illegal drug user." [Doc. 1 at Page ID # 5, ¶ 23]. In her original complaint, Plaintiff asserted one claim—unlawful termination/refusal to reinstate in violation of the Americans with Disabilities Act ("ADA") [*Id.* at Page ID # 5, ¶ 24-26]. Plaintiff also claimed Defendant was responsible for the actions of its supervisory employees under a theory of respondeat superior [*Id.* ¶ 27].

Defendant filed a motion to dismiss Plaintiff's original complaint on January 11, 2021 [Doc. 9], the substance of which is not addressed herein. In the motion to dismiss, Defendant disclosed the name of the controlled substance Plaintiff tested positive for which it claims led to her termination. Plaintiff then filed the instant motion to amend on February 15 [Doc. 17]. She seeks to add new claims to her complaint for "unlawful disclosure of medical information in violation of the Americans with Disabilities Act and Tennessee Common Law," arising from Defendant's disclosure in the motion to dismiss [*Id.* at Page ID # 47]. She also seeks to make unidentified "minor, nonsubstantive changes" [*Id.*]. Defendant does not oppose the referenced minor, nonsubstance changes.

## II.     STANDARDS

Rule 15 of the Federal Rules of Civil Procedure directs that, where an amendment is not made as a matter of course, "a party may amend its pleading only with the opposing party's written

2

consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

Factors relevant in determining whether leave should be denied include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). Although leave to amend is ordinarily freely given under Rule 15, an amendment may be denied as futile if the claim sought to be added "could not withstand a Rule 12(b)(6) motion to dismiss." *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts that, if true, state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Flanory v. Bonn*, 604 F.3d 249, 252-53 (6th Cir. 2010). A court must determine not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). While the court must construe the complaint in the light most favorable to the claimant and accept as true all well-pleaded factual allegations, legal conclusions and unwarranted factual inferences need not be accepted as true. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). Courts are prohibited from looking to facts outside the proposed amended pleading when determining whether the amendment is futile. *See Rose*, 203 F.3d at 420-21. Courts may consider the complaint and any exhibits, as well as "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

3

referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III. ANALYSIS

Plaintiff's proposed amended complaint includes four new claims (Claims 2 through 5), in addition to the wrongful termination claim and assertion of respondeat superior liability from the original complaint. The newly proposed claims are: unlawful disclosure of medical information in violation of the ADA (Count 2); retaliation, in violation of the ADA (Count 3); public disclosure of private facts, in violation of Tennessee common law (Count 4); and employer disclosure of employee personal information, in violation of Tennessee common law (Count 5). Again, each of these claims relates to Defendant's statements in its motion to dismiss, in which Defendant identifies the controlled substance present in Plaintiff's drug test.

Defendant does not argue undue delay, bad faith, or prejudice; instead, it argues the motion to amend as to these new claims should be denied because none of the proposed new claims could survive a motion to dismiss and the amendment is therefore futile.

#### A. Exhaustion of Administrative Remedies (Counts 2 and 3)

Defendant argues Plaintiff's proposed ADA claims are futile because Plaintiff did not exhaust her administrative remedies before filing suit. A "claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citations omitted). "A charge is sufficient if it serves to 'identify the parties[ ] and to describe generally the action or practices complained of.'" *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009) (quoting 29 C.F.R. § 1601.12(b)) (alteration in original).

4

The EEOC must then determine whether to issue a right to sue letter. "Until an employee receives a right to sue letter from the EEOC, she has not exhausted her administrative remedies and may not file suit under the ADA." *Oliver v. Titlemax*, 149 F. Supp. 3d 857, 863 (E.D. Tenn. 2016) (citing 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a)) (granting defendant's motion to dismiss claims not addressed in EEOC charge). "[T]he failure to obtain a right-to-sue letter is not a jurisdictional defect; rather the right-to-sue letter is a condition precedent." *Parry*, 236 F.3d at 309 (citation omitted). Nevertheless, an ADA claim is "subject to a motion to dismiss at any time before notice of the right to sue is received." *Portis v. State of Ohio*, 141 F.3d 632, 635 (6th Cir. 1998) (quoting *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1218 (5th Cir. 1982)).

Plaintiff's proposed amended complaint states: "Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. Plaintiff has received her Notice of Right to Sue, which is attached." [Doc. 17 at Page ID # 64, ¶ 55]. The referenced right to sue letter is not attached to the proposed amended complaint. Plaintiff, however, does attach a right to sue letter to her original complaint, and that letter is dated September 21, 2020 [Doc. 1-1 at Page ID # 8]. Defendant's allegedly unlawful disclosure/act of retaliation (filing the motion to dismiss) occurred nearly four months later, on January 11, 2021 [Doc. 9].

Based on the current record, I find Plaintiff has not exhausted her administrative remedies as to the new ADA claims and therefore may not assert the proposed ADA claims at this time. Plaintiff's reference to a right to sue letter in her proposed amended complaint clearly relates to the original right to sue letter attached to her original complaint. To conclude otherwise is to make

an unwarranted factual inference, particularly considering that Plaintiff failed to file a reply to clarify that she had, in fact, administratively exhausted the new ADA claims.[2]

Accordingly, I recommend Plaintiff not be permitted to pursue her proposed Claims 2 and 3, for unlawful disclosure and retaliation in violation of the ADA at this time.

### B. Retaliation in Violation of ADA (Claim 3)

In an effort to provide clarity, I will further address Plaintiff's proposed retaliation claim (Claim 3). The ADA prohibits "retaliation against any individual because of his or her opposing practices made unlawful by the [ADA] or otherwise seeking to enforce rights under the [ADA]." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 696-97 (6th Cir. 2013) (citing 42 U.S.C. § 12203) (other citations omitted). To establish a prima facie case of retaliation under the ADA, a plaintiff must show that (1) she "engaged in activity protected by the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

Regarding the retaliation claim, the proposed amended complaint simply states:

> 25. Defendant filed a Motion to Dismiss on January 11, 2021. In that Motion, Defendant disclosed Plaintiff's prescription medication by name.
>
> 26. Based on the unnecessary and wrongful disclosure of Plaintiff's prescription medication, Plaintiff filed a Motion to Strike and a response to the Motion to Dismiss.
> . . . .

---

[2] Furthermore, I note Plaintiff does not allege in her proposed amended complaint or argue in her motion to amend that the proposed ADA claims are not subject a separate exhaustion requirement, that there are any grounds for finding the exhaustion requirement waived, or that Defendant is equitably estopped from relying on the exhaustion requirement. *See Portis*, 141 F.3d at 634-35 (administrative exhaustion not a jurisdictional requirement but a requirement "subject to waiver, estoppel, and equitable tolling." (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))).

*Claim 3: Retaliation (ADA)*

>    37.   Defendant discriminated against Plaintiff by terminating her employment and by refusing to reinstate her to her former position.
>
>    38.   Plaintiff engaged in protected activity when she filed a charge with the EEOC and when she filed her Complaint.
>
>    39.   Defendant retaliated against Plaintiff by disclosing her prescription medication in violation of 42 U.S.C.A. § 12112.
>
>    40.   Plaintiff has suffered and will continue to suffer because of Defendant's unlawful disclosure.

[Doc. 17 at Page ID # 61, 63].

I conclude the retaliation claim does not adequately assert that the allegedly unlawful disclosure was prompted by Plaintiff's filing of the EEOC charge or the complaint, and there are no facts in the proposed amended complaint which currently support such an inference. Accordingly, I find Plaintiff has failed to adequately plead the requisite causal connection element, rendering her proposed retaliation claim futile for this additional reason. *Cf. Spengler v. Worthington Cylinders*, 615 F.3d 481, 492 (6th Cir. 2010) (finding causal connection sufficiently alleged where employee pled some facts, such as how employer's demeanor changed after plaintiff complained, and how employer denied making certain comments).

    **C.**    **Unlawful Disclosure in Violation of the ADA (Claim 2)**

Again, in an effort to promote clarity, I will further address Plaintiff's proposed unlawful disclosure claim (Claim 2). Defendant argues Plaintiff's proposed unlawful disclosure claim is futile because "the ADA imposes only limited confidentiality obligations, which are not applicable to the information in question in this case." [Doc. 23 at Page ID# 108]. Even if the confidentiality obligations did apply, Defendant further argues, "they do not permit Plaintiff to use the ADA as both a sword and a shield where she put her medication at issue in filing her claim." [*Id.*]. In

summary, I am not persuaded by Defendant's arguments in support of additional grounds for finding Plaintiff's unlawful disclosure claim (Claim 2) futile. The motion to amend should nevertheless be denied as to this claim because of the administrative exhaustion issue discussed above.

### 1. Applicability of ADA confidentiality provisions

As this Court has held, "the ADA, in subsection 12112(d)(4)(C), sets out only two circumstances in which an employer is required to keep medical information it obtains confidential, those listed in subsection 12112(d)(4)(B): (1) where the employer has 'conduct[ed] voluntary medical examinations . . . which are part of an employee health program available to employees at that work site' and (2) where the employer has made 'inquiries into the ability of an employee to perform job-related functions.'" *Fisher v. Harvey*, No. 1:05-CV-102, 2006 WL 849868, at *7 (E.D. Tenn. Mar. 31, 2006) (quoting 42 U.S.C. § 12112(d)(4)(B), (C)). Defendant argues Plaintiff "cannot plausibly allege" that the drug test results fall under (d)(4)(B), because "[t]he drug tests were not voluntary, part of an employee health program, or conducted for the purposes of determining Plaintiff's ability to physically perform her job functions." [Doc. 23 at Page ID # 110].

The proposed amended complaint states that on "April 10, 2019, Plaintiff submitted to a drug test," which "came back positive" for a medication Plaintiff had been prescribed after "suffering an on-the-job injury." [Doc. 17 at Page ID # 59, ¶ 10]. It further states she was terminated as a result of the positive results, and that "Defendant's stated reason for the termination was that Plaintiff had violated Defendant's substance abuse policy." [*Id.* ¶ 11]. Finally, the proposed amended complaint states that "Defendant obtained information concerning Plaintiff's prescription medication as a result of a drug test and subsequent inquiry into Plaintiff's medical

8

Case 1:20-cv-00346-DCLC-SKL   Document 24   Filed 03/24/21   Page 8 of 14
PageID #: 126

information," and that the "prescription medication is confidential medical information." [*Id.* at Page ID # 62, ¶ 32-33]. Plaintiff's motion to amend states that she "is unsure whether the purported drug test at issue was routine or was based on an alleged reasonable suspicion on behalf of Defendant. Plaintiff expects these facts to become clear as the parties engage in discovery. Additionally, Defendant's continued inquiry into Plaintiff's medical condition and prescription may have been a medical inquiry." [*Id.* at Page ID # 50].

Although the complaint is not a model of clarity or specificity, I find Plaintiff has made allegations sufficient to allow the inference that the drug test constitutes an "inquir[y] into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). The very fact that Plaintiff was fired for the results of the drug test implies it was at least roughly related to her ability to perform her job.

I also note the two cases Defendant cites were decided on motion for summary judgment. *See Yoder v. Ingersoll-Rand Co.*, 172 F.3d 51, 1998 WL 939885 (6th Cir. Dec. 22, 1998); *Fisher*, No. 1:05-CV-102, 2006 WL 849868, at *6-7 (denying Plaintiff's motion for partial summary judgment on confidentiality claims); *see also Sherrer v. Hamilton Cnty. Bd. of Health*, 747 F. Supp. 2d 924, 933 (S.D. Ohio 2010) ("courts have allowed claims of illegal disclosure of confidential medical information to proceed to a jury when there are facts in the record demonstrating that a supervisor probed an employee for medical information"); *Giaccio v. City of New York*, No. 04 Civ. 3652(RWS), 2005 WL 95733 (S.D.N.Y. Jan. 19, 2005) (denying motion to dismiss unlawful disclosure claim based on § 12112(d)(4)(B) where employer disclosed results of drug test). As noted above, with few exceptions, courts are prohibited from looking to facts outside the proposed amended pleading when determining whether a proposed amendment is futile. *See Rose*, 203 F.3d at 420-21.

I acknowledge Defendant's position that the results of the drug test are "governed by" subsection § 12112(d)(4)(A), and its related argument that there are no confidentiality obligations on employers "with respect to medical examinations" under that subsection [Doc. 23 at Page ID # 110]. Defendant's position is based on *Yoder*. In *Yoder*, an employee's HIV positive status was accidentally disclosed to his mother, who worked for the same company. The Sixth Circuit held that the information was not collected as part of a voluntary medical exam or history at an on-site employee health program, and therefore the information did not qualify as confidential under § 12112(d)(4)(B). 1998 WL 939885, at *1-2. The court went on to hold:

> [E]ven if this information could be considered to be information obtained under subparagraph (A), which prohibits medical examinations and inquiries into disabilities unless the examination or inquiry is shown to be job-related and consistent with business necessity (in this case, Yoder might argue that this information was relative to his need for medical leave), it is clear that the confidentiality requirement of subparagraph (C) does not cover subparagraph (A).

*Id.* at *2.

The court in *Yoder* did not consider, however, whether the information was required to be kept confidential as an "inquir[y] into the ability of an employee to perform job-related functions," the second part of § 12112(d)(4)(B). *See Fisher*, 2006 WL 849868, at *7 (describing "two circumstances" under subsection (d)(4)(B) "in which an employer is required to keep medical information it obtains confidential").

### 2. Use of medical information in litigation

Defendant also argues that even if the information is protected by § 12112(d)(4)(C), Plaintiff's unlawful disclosure claim is futile because Defendant "is not prohibited from disclosing the medication in defense of Plaintiff's ADA claim in this lawsuit." [Doc. 23 at Page ID # 111]. Information protected by § 12112(d)(4)(C) is required to be "collected and maintained on separate

10

Case 1:20-cv-00346-DCLC-SKL Document 24 Filed 03/24/21 Page 10 of 14
PageID #: 128

forms and separate medical files and is treated as a confidential medical record," with the following exceptions:

> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
>
> (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>
> (iii) government officials investigating compliance with this chapter shall be provided relevant information on request . . . .

42 U.S.C. § 12112(d)(3)(B).

Although litigation is not listed as a permissible use, Defendant argues the statute should not be construed narrowly as only permitted disclosure under those three circumstances. Quoting a case from the Eastern District of Michigan, Defendant argues that the statute "must be interpreted with an eye towards eliminating discriminatory actions by employers on the basis of information gleaned from job-related medical examinations," but not to prevent an employer from defending itself in litigation [Doc. 23 at Page ID # 111 (quoting *Dillon v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 896, 906 (E.D. Mich. 2014))].

Neither the *Dillon* case nor the other authorities Defendant cites suggest a blanket litigation exception to the ADA confidentiality provisions. The *Dillon* court emphasizes the following language from the EEOC Enforcement Guidance documents: "*Of course, the employer may only share the medical information with individuals involved in the hiring process (or in implementing an affirmative action program) who need to know the information.*" 35 F. Supp. 3d at 907. In concluding the employer's disclosures did not violate the ADA, the *Dillon* court reasoned that the employer informed only those individuals who needed to know, the employer redacted other confidential information from the records, and the actual cause of the employee's termination was

11

his failure to disclose the injury (rather than the injury itself). *Id.* at 909; *see also Floyd v. SunTrust Banks, Inc.*, 878 F. Supp. 2d 1316, 1325 (N.D. Ga. 2012) ("[T]he proper concern is ensuring that the information disclosed pursuant to an employer's medical inquiry spreads no farther than necessary to satisfy the legitimate needs of both employer and employee.")

At least with respect to the motion to amend, Defendant has not shown a blanket litigation exception to the ADA confidentiality provisions makes the proposed claim futile under applicable standards.[3]

### D. Tennessee Common Law Claims (Claims 4 and 5)

Plaintiff also includes two new state law tort claims in her proposed amended complaint, "public disclosure of private facts" (Claim 4), and "employer disclosure of employee personal information" (Claim 5). Plaintiff acknowledges that employer disclosure of employee personal information has not been recognized as a tort in Tennessee, and further that Claim 5 is simply a restatement of Claim 4 in "the employment context." [Doc. 17 at Page ID # 52]. Defendant argues both of these claims are futile because they are "barred by the litigation privilege." [Doc. 23 at Page ID # 115].

As Defendant points out, in *Lambdin Funeral Service v. Griffith*, 559 S.W.2d 791, 792 (Tenn. 1978), the Tennessee Supreme Court held that "statements made in the course of a judicial proceeding that are relevant and pertinent to the issues involved are absolutely privileged and

---

[3] I acknowledge the "very high barrier a party must surmount to overcome the presumption of openness as to a court's record." [*see* Doc. 4 (Memorandum and Order Regarding Sealing Confidential Information) and authorities discussed therein]. However, Defendant has not demonstrated a "need to know" or a need to disclose the name of the medication in a publicly available document, at least not at this early stage of the proceedings. Moreover, the parties know what the drug is, and there is no dispute it is a controlled substance for which Plaintiff had a prescription, albeit a potentially outdated or invalid prescription. I also acknowledge the name of the drug is potentially relevant to Defendant's motion to dismiss and to the parties' claims and defenses.

12

cannot be the predicate for liability in an action for libel, slander, **or invasion of privacy**." (Emphasis added); *see also West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 642 (Tenn. 2001) (identifying public disclosure of private facts as a type of invasion of privacy) (citation omitted)). This Court has relied on *Lambdin* to dismiss on a Rule 12(b)(6) motion a defamation claim premised on statements made by counsel during litigation. *Cordell v. Town of Signal Mountain*, No. 1:13-cv-137, 2014 WL 5704662, at *13 (E.D. Tenn. Nov. 5, 2014).

The identification of the medication appears to be relevant and pertinent to the issues involved in this case generally. Plaintiff's argument to the contrary—that her "prescription was not even an issue in this lawsuit"—is completely unavailing [Doc. 17 at Page ID # 51-52].[4] Defendant asserts it lawfully terminated Plaintiff because she tested positive for a controlled substance in violation of Defendant's substance abuse policy. Plaintiff claims she had a valid prescription, and that Defendant wrongfully perceived her as being a "drug abuser," making her termination unlawful under the ADA. Defendant maintains that Plaintiff's use of the medication was illegal because her prescription was invalid and outdated, and therefore Plaintiff's termination was permitted under the ADA. The name or identity of the controlled substance at issue would certainly make these assertions more or less probable. *See* Fed. R. Evid. 401. Moreover, at least one Tennessee statute Defendant relies on in support of its motion to dismiss, Tennessee Code Annotated § 53-11-308, applies to prescriptions for only certain types of controlled substances. Identifying the drug is therefore a key part of Defendant's defense.

---

[4] Plaintiff advanced this argument in her opening brief in a general discussion of her state law tort claims. I again note she did not file a reply brief, and therefore did not address any of Defendant's arguments about the litigation privilege.

Accordingly, on the current record Defendant's disclosure of the medication is protected by the litigation privilege and cannot be the basis of an invasion of privacy claim. Plaintiff's Claims 4 and 5 are therefore futile.

## IV. CONCLUSION

I **RECOMMEND**[5] Plaintiff's motion to amend the complaint [Doc. 17] be **GRANTED IN PART AND DENIED IN PART**. I recommend Plaintiff be permitted to amend her complaint to make the unopposed, unspecified "minor, nonsubstantive changes" [Doc. 17 at Page ID # 47] mentioned above. I recommend Plaintiff's motion be denied in all other respects. If the Court adopts this recommendation, I further recommend Plaintiff be ordered to file an amended complaint that conforms to this report and recommendation within seven days of entry of the Court's order.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusory and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).